## EBEN SUTTON *vs.* DANIEL R. BOWKER.

Goods carried by sea were, by the terms of the bill of lading, to be delivered " at the Essex Railroad Wharf." The Essex Railroad Company owned but one wharf, which was by the side of their road, above two drawbridges. *Held*, that, for the purpose of showing that a wharf called Phillips's Wharf, below the bridges, was the wharf intended by the parties, evidence was admissible that that wharf was generally known as the Essex Railroad Wharf, and was used by the railroad company to receive merchandise at; that more freight was charged at the port of shipment for vessels which had to pass draw-bridges than for those which had not; that this vessel had previously delivered goods to the same consignee at the lower wharf; and that the upper wharf was more difficult and dangerous of access, and could not be safely approached by vessels of this size.

REPLEVIN of one hundred and seventy one tons of coal, shipped at Philadelphia on board the schooner Maria Theresa, (of which the defendant was agent,) to be delivered, by the terms of the bill of lading, to the plaintiff at Salem, "at the Essex Railroad Wharf."

At the trial in the court of common pleas, it appeared that the defendant had offered to deliver the coal at a wharf in Salem, called Phillips's Wharf, on payment of the freight. The plaintiff contended that the " Essex Railroad Wharf" mentioned in the bill of lading was not Phillips's Wharf; but was a wharf built by the side of a branch of the railroad of that company on the North River, above two drawbridges; and introduced much evidence to show that this wharf was the only wharf known as and called the " Essex Railroad Wharf ; " and that the railroad company landed wood and merchandise at this wharf. It did not appear that the company owned any other wharf than this, except the remains of an old wharf never used by them as such, which was within the limits of their location, near Phillips's Wharf.

*Bishop,* J. submitted to the jury the question, which wharf was the one mentioned in the bill of lading ; and admitted, on that question, against the plaintiff's objection, the following evidence introduced by the defendant : The Essex Railroad Company, at the time of the arrival of the schooner, had the right, by contract, to run their cars to Phillips's Wharf; and had re-

ceived there large quantities of coal landed for them.    Several masters of vessels and pilots testified that that wharf was generally called and known as " the Essex Railroad Wharf; " and that the other wharf could not be safely approached by a vessel drawing as much water as this, and was much more difficult and dangerous of approach than the lower wharf.    A higher rate of freight was asked and paid in Philadelphia, if the vesse. was required to pass drawbridges, than if not so required.    The captain of the schooner testified that he had previously brought coal for the plaintiff, and landed it at Phillips's Wharf; but the bills of lading of that coal were not produced, nor was there any evidence of their contents.    The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*T. M. Stimpson,* for the plaintiff.    Parol evidence is inadmissible to vary or contradict the express words of a valid written contract.    3 Stark. Ev. (4th Amer. ed.) 996 *& seq.,* 1005, 1006. *Hunt* v. *Adams,* 7 Mass. 518.    *Trustees in Hanson* v. *Stetson,* 5 Pick. 506.    *Child* v. *Wells,* 13 Pick. 121.    *Clark* v. *Flint,* 22 Pick. 231.

If the words of a written contract be 'free from obscurity, the evidence adduced must clearly raise a latent ambiguity, before evidence can be offered of the intention of the parties, or other extrinsic matter.    And as, in this case, the wharf proved to be owned and used by the Essex Railroad Company fully answered the description in the bill of lading according to the natural import of its terms, parol evidence ought not to have been admitted to show that Phillips's Wharf was intended by the parties.    3 Stark. Ev. 1021, 1022, 1026, 1027.    *Brown* v. *Saltonstall,* 3 Met. 427.

If any parol evidence was admissible in this case, too great latitude was allowed to the defendant.    The fact, that higher rates of freight were charged in Philadelphia when the vessel was to pass through drawbridges than when it was not, had no bearing, without further showing what rate was charged in this case.    Nor could the testimony of the master, that he had formerly delivered coal to the plaintiff at Phillips's Wharf, affect this case, without showing the terms of the former bills of

ading. The testimony of the pilots, as to which wharf was most convenient, cannot affect the construction of the express agreement of the parties.

*S. H. Phillips & J. A. Gillis,* for the defendant.

DEWEY, J. We fully accord with the counsel for the plaintiff in the position, that oral evidence is inadmissible to control or vary the express stipulations of a written contract. If the evidence here offered by the defendant had been of that character, it ought to have been rejected. But it was professedly offered not to contradict the written contract, but to apply the contract to its proper subject, by showing that the wharf therein described was the wharf at which the defendant had the coal ready for delivery to the plaintiff. While it is true that you are to recur to the written contract for the place of delivery, yet, taking such description as fixing the place, you may resort to oral evidence to apply the description to any particular structure, and thus to show what was the place intended.

If the description be such as requires its application to one place exclusively, that is decisive. If, in the present case, there was only one " Essex Railroad Wharf," and the place where this coal was ready for delivery did not answer the call or description in the writing, it would not be competent for the defendant to show that the parties really intended that place, and that through some mistake of the scrivener, in drafting the contract, the words " Essex Railroad Wharf " had been introduced.

But it was competent for the defendant to show that the wharf, formerly known as " Phillips's Wharf," was in fact, at the time of the making of this contract, the " Essex Railroad Wharf," known by that name, and used as such, and so practically understood by the business community. This is not contradicting the contract, but fixing by the evidence the place referred to in the written contract. We think, in this respect, great latitude was properly allowed in admitting evidence tending to show that the wharf, at which the coal was ready for delivery, was that stipulated by the parties in their contract. *Claremont* v. *Carlton,* 2 N. H. 373.

The further inquiry in the case is, whether any portion of the

evidence admitted was of such objectionable character as requires us to set aside the verdict and grant a new trial.

The admission of testimony, to show that higher rates of freight were charged in Philadelphia if the vessel was required to pass through drawbridges, is perhaps the most questionable of any of the rulings excepted to. This might be proper testimony, as one link in the chain, if followed up by further testimony that the freight paid in this case was the cheaper freight, and not that paid when the vessel passed through the drawbridges. Without such additional facts, the evidence would be liable to the objection of irrelevancy; but we do not think its admission of such materiality as requires us to set aside the verdict on that account.

The testimony of the master of the vessel, that he had previously delivered coal to the plaintiff at this wharf, is subject to the same remarks; and would be irrelevant without further proof that the bill of lading in that case was like the present.

The testimony of the pilots, as to the unfitness of the other wharf for unloading the cargo of a vessel drawing eleven feet of water, and that it was much more difficult and dangerous for vessels to go to that wharf than to the wharf used by the defendant, were only admissible as facts tending to show which was the wharf stipulated in the contract. It is to be assumed that all these facts were admitted under proper instructions, limiting their effect to giving aid in the application of the words used in the contract to the proper subject, and not authorizing the jury to substitute another and different wharf, because such other wharf was more easily accessible and better adapted to the delivery of the coal. · *Exceptions overruled.*